**Michael Fuller, OSB No. 093570**
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
team@underdoglawyer.com
Phone 503-222-2000

Lead Trial Attorney for Mr. Herzberg

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DARYN HERZBERG**

Plaintiff

vs

**THE UNITED STATES OF AMERICA**

Defendant

Case No. 3:26-cv-00410-JR

**PLAINTIFF'S OBJECTION TO DEFENDANT'S CONFIDENTIALITY DESIGNATION**

**Oral Argument Requested If Deemed Appropriate**

## LR 7-1 CERTIFICATION

I certify that in compliance with LR 7-1, the parties made good faith efforts through telephone conferences to resolve this dispute and have been unable to do so. Fuller Decl. ¶ 1; Exhibit 1.

## OBJECTION

Under FRCP 26(c), the Court's inherent authority, and the Court's protective order (ECF 10 ¶ 11), plaintiff respectfully objects to and challenges defendant's confidentiality designation with respect to the names of the officers depicted in the video attached as Exhibit 054.

## FACTUAL BACKGROUND

On August 13, 2025, plaintiff was peaceably assembled outside the Portland ICE facility when officers attacked him from behind and smashed his head into the pavement. Fuller Decl. ¶ 7; Exhibit 054.

On July 15, 2026 defendant moved for a protective order in this case, citing the need to maintain the confidentiality of certain medical, tactical, and other sensitive information. ECF 9 pg. 2. On July 16, 2026 the Court entered defendant's proposed protective order. ECF 10.

On September 2, 2026, defendant circulated initial disclosures designating the names of the attacking officers depicted in Exhibit 054 as confidential and attorneys' eyes only. Fuller Decl. ¶ 2. During conferral, defendant could not cite to any particularized or specific harm that will result if the officers' names are publicly disclosed. *Id.* Rather, defendant cited only to the general concern of the prospect of potential future doxing and referenced the declarations filed in a prior case, *Oregon v. Trump*, 3:25-cv-01756-IM (D. Or. March 24, 2026), ECF 177. *Id.*

## LEGAL POINTS AND AUTHORITIES

### 1. Legal standards

"As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'" *In re Roman*, 661 F.3d 417, 424 (9th Cir. 2011). A limited exception to the right of public access exists under FRCP 26(c), where the "party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm **will** result' if the protective order is not granted." *Id.* (emphasis added).

Only if good cause is shown, the Court must move on to step two of the analysis and "balance the public and private interests to decide whether maintaining a protective order is necessary." *Id.* (citation modified). This second step requires the Court to consider the following factors: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id.* at n. 5.

**2. A generalized concern about the mere prospect of potential future doxing does not constitute a good cause showing that "specific prejudice or harm will result."**

Ample policy reasons exist to oppose an administration's attempt to create an unidentified federal police force aided by a secret judicial system. Fuller Decl. ¶ 3. But plaintiff's objection in this case should be decided based on the two-step analysis described in *In re Roman*, not policy reasons.

Plaintiff agrees that good cause may exist to restrict public access to sensitive personal information and personnel records of the attacking officers, as well as other tactical information and government records essential for the functionality and operation of the agencies involved. *See Bernat v. City of California City,* No. 1:10-CV-00305, 2010 WL 4008361, at *7 (E.D. Cal. Oct. 12, 2010) ("City is ordered to redact the officers' addresses and other contact information, social security numbers, drivers license numbers, dates of birth and any other personal identifiers (**<u>except for the officers' names</u>**) in addition to any salary or tax information." (emphasis added)). However, as explained below, treatment of the attacking officers' *names* as confidential is not warranted. And this objection would not be before the Court if the attacking officers were confidential informants, undercover agents, or if the case presented other circumstances where disclosure of the officers' names would compromise on ongoing covert mission or operation.

However, during conferral, defendant confirmed that the attacking officers are not undercover—they are simply viewed as unpopular by certain segments of the public. Fuller Decl. ¶¶ 4–5. But unpopularity alone, without a showing that specific prejudice or harm will result does not constitute good cause under FRCP 26(c).

Albeit in the somewhat divergent context of federal officers seeking to proceed anonymously as plaintiffs without disclosing their identities, the Court of Federal Claims soundly reasoned that:

> Granting anonymity for government employees by virtue of their employer and without a showing of any particularized harm would unduly expand a practice reserved for unique circumstances. The logic of the ATF Agents could be applied to many government employees. Generic threats from terrorist organization and hostile governments or potential harassment from anti-war protesters could warrant allowing any current or former members of the military to proceed anonymously. If the 'current polarized public conversation on gun control' warrants blanket anonymity for ATF employees, . . . so too would the polarized public conversations on immigration, environmental regulations and climate change, taxation, and warrants issued by the Foreign Intelligence Surveillance Court, to name a few, in turn justify blanket anonymity for employees of Immigrations and Customs Enforcement, the Environmental Protection Agency, the Internal Revenue Service, or the Federal Judiciary.

*Boggs v. United States*, 143 Fed. Cl. 508, 519 (2019).

In an even more analogous context, even where the government agent witnesses were merely third parties to the litigation rather than tortfeasors, a Southern District of New York court very recently ruled that "[t]he countervailing interests identified by the defendants do not

overcome the strong presumption of public access here. The defendants principally invoke the privacy and safety interests of nonparty employees, citing generalized concerns about threats and harassment directed at DOGE personnel," and "considering the strong presumption of public access and the diminished countervailing interests asserted by the defendants, the common law requires the unsealing of the DOGE Agents' names in this case." *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, 827 F. Supp. 3d 513, 521 (S.D.N.Y. 2026). As an additional reason to order the unsealing of the agents' names, the court found that the

> defendants have not carried their burden of demonstrating that continued sealing of the DOGE Agents' identities is necessary to preserve a higher value. As discussed above, their asserted concerns rest on generalized references to harassment, not on 'specific, on-the-record' evidence showing that nondisclosure in this case is "necessary" to mitigate harm. Nor have the defendants shown that redaction of the identities of all sixteen DOGE Agents is narrowly tailored, particularly where those identities and their affiliation with DOGE are already publicly available from other sources. Because the defendants have not made the showing necessary to overcome the First Amendment presumption of access, continued sealing of the DOGE Agents' names is also rejected on that ground.

*Id.* at 522 (S.D.N.Y. 2026) (citation modified).

**3. The "balancing test" factors favor public access.**

Even *if* defendant could make a good cause showing that specific prejudice or harm will result from disclosure of the names of the

attacking officers, the relevant factors in the second step of the analysis favor sustaining plaintiff's objection here.

Factor one favors public access because plaintiff's objection pertains only to the *names* of the attacking officers, not to any personnel file or sensitive personal information of the officers. *Bernat*, 2010 WL 4008361, at *7; *Boggs*, 143 Fed. Cl. at 520 ("[G]eneral allegations of harm cannot overcome the public interest in judicial transparency served by requiring plaintiffs to proceed in their proper name. But, because no comparable public interest exists in knowing a plaintiff's home address or personal contact information and because plaintiffs have privacy interests in these respects, the generalized harm the ATF Agents allege suffices to permit them to seal their home addresses or other personal contact information and to redact that information from any public filings.").

Factor two favors public access because the names of the attacking officers identify the individual tortfeasors and witnesses subject to mandatory disclosure by defendant under FRCP 26. Plaintiff has a legitimate purpose in using these names in his publicly filed documents, and the purpose of accessing the information by the public and the press is legitimate. *Am. Fed'n of Gov't Emps.*, 827 F. Supp. 3d at 520 ("The presumption of public access to the material at issue here is strong. The identities of the DOGE Agents are not incidental details

in this litigation."); *id.* ("The issue is not whether the Court can decide the case while substituting placeholders for names. It is whether the public can adequately monitor the judicial process and understand the governmental conduct being challenged in federal court. From that perspective, the identities of the individuals at issue matter."); *id.* at 522 ("Because the defendants have not made the showing necessary to overcome the First Amendment presumption of access, continued sealing of the DOGE Agents' names is also rejected on that ground.").

Further, maintaining strict confidentiality of the names of the attacking officers under penalty of contempt in this case has a chilling effect on plaintiff's ability to conduct standard discovery and to crowdsource information relevant to his claims. Fuller Decl. ¶¶ 5–6. While plaintiff abides by defendant's confidentiality designation as he waits for the Court to rule on this objection, he cannot share the attacking officers' names with AI search tools or background check services that would typically be done as a matter of course in federal civil litigation practice, nor has plaintiff provided the officers' names to any private investigators or third parties to aid in the development of work product. *Id.* Unless this objection is sustained, plaintiff also remains restricted from crowdsourcing pattern and practice and habit information and relevant communications with third parties from the attacking officers in order to help him establish the intent element of his

battery claims.[1] So long as the names of the attacking officers remain subject to filing under seal and restricted from public access, plaintiff remains prohibited from crowdsourcing information about prior assaults involving the officers from the public, including from other peaceful assemblers and from court-appointed criminal defense attorneys for other peaceful assemblers who may have knowledge of such information. Fuller Decl. ¶ 6.

The complaint in this case alleges that plaintiff was specifically targeted "with excessive force because he used his First Amendment rights to criticize the Trump administration" and that at least one of the attacking officers was personally familiar with plaintiff, allegedly saying, "You're not talking shit anymore, are you?" during the second of the two attacks at issue. ECF 1 ¶¶ 2, 9; Fuller Decl. ¶ 5. Factor two favors allowing public access to the names of the attacking officers so plaintiff may freely conduct discovery as to the background and intent of the officers, including pattern and practice and habit evidence and communications the officers had with colleagues and third-parties

---

[1] *See, e.g., Frison v. United States*, 3:21-cv-01618-AN (D. Or. August 26, 2025), ECF 79 (a plaintiff claiming assault or battery must prove "intent" with subjective evidence that the tortfeasor either "desired to cause the consequences of [their] actions" or "believed that the consequences were substantially certain to result from [their] actions."). Whether the officers in this case believed that attacking a civilian from behind was substantially certain to cause harm could be proven by the officers' involvement in prior similar attacks. Notably, the DHS agent found liable for assault in the *Frison* case was permitted to proceed publicly under his true identity by a prior administration without issue.

pertaining to plaintiff, and communications the officers had with senior DHS officials which may have formed the basis of the false statements made about plaintiff to FOX and ABC news affiliates shortly after the attack shown in the video. Fuller Decl. ¶¶ 4–5; Exhibit 1.

Factor three is likely neutral because the information at issue—the names of the attacking officers—is not the type of sensitive medical or personal information that would cause embarrassment if disclosed. *Bernat*, 2010 WL 4008361, at *7; *Boggs*, 143 Fed. Cl. at 520.

Factor four favors public access, because keeping the names of the attacking officers sealed is not relevant to public health or safety, whereas disclosing "the identities of the [attacking officers] involved bear directly on the public's ability to understand and scrutinize the challenged exercise of governmental authority." *Am. Fed'n of Gov't Emps.*, 827 F. Supp. 3d at 521.

Factor five favors public access because requiring the parties to redact and file under seal every single discovery motion, dispositive motion, motion *in limine*, pre-trial witness statement, exhibit, etc. referencing the names of the attacking officers would reduce efficiency. *See Dusek v. Hernandez-Najera*, No. 3:26-CV-00336-MMD-CSD, 2026 WL 2969858, at *4 (D. Nev. Oct. 1, 2026) (finding that because "the sharing of the information in the IA file will promote fairness and

efficiency, as it will decrease the time spent by the parties redacting their public filings. This factor therefore weighs in favor of disclosure.").

Factor six favors public access because the attacking officers are public law enforcement officers and alleged tortfeasors. *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992) ("On the other hand, a federal government employee investigated for criminal misfeasance relating to the performance of official duties generally possesses a diminished privacy interest."); *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (status as a public law enforcement officer reduces privacy interest, especially where allegations of misconduct are involved); *Hum. Rts. Def. Ctr. v. U.S. Dep't of Homeland Sec.*, No. C18-1141 TSZ, 2021 WL 1264003, at *3 (W.D. Wash. Apr. 6, 2021) ("[A]t least with respect to the ICE employees named in the Settlement, the alleged misfeasance relating to their official duties further diminishes any privacy interest in nondisclosure." (citation modified)).

Factor seven favors public access because the case involves issues important to the public, as warranted by the ongoing coverage of this case by members of the public and the press. *See also Am. Fed'n of Gov't Emps.*, 827 F. Supp. 3d at 520–22; *Dusek*, 2026 WL 2969858, at *4 ("[T]he issue of excessive force during police interactions, and the

response of the employing agency, are matters of significant public importance. This factor therefore weighs in favor of disclosure.”).

## CONCLUSION

For all these reasons, plaintiff respectfully objects to and challenges defendant’s confidentiality designation of the names of the attacking officers.

**DATED:** October 30, 2026

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 093570**
Lead Trial Attorney for Mr. Herzberg
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
team@underdoglawyer.com
Phone 503-222-2000

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DARYN HERZBERG**<br><br>Plaintiff<br><br>vs<br><br>**THE UNITED STATES OF AMERICA**<br><br>Defendant | Case No. 3:26-cv-00410-JR<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT** |

I, Michael Fuller, certify that this memorandum complies with LR 26-3 because it contains 2,401 words, excluding the caption, signature block, exhibits, and any certificates of counsel.

**DATED:** October 30, 2026

s/ Michael Fuller

**Michael Fuller, OSB No. 093570**
Lead Trial Attorney for Mr. Herzberg
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
team@underdoglawyer.com
Phone 503-222-2000

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DARYN HERZBERG**

Plaintiff

vs

**THE UNITED STATES OF AMERICA**

Defendant

Case No. 3:26-cv-00410-JR

**CERTIFICATE OF SERVICE**

I, Michael Fuller, certify that I caused this document to be served on all parties entitled to service via the electronic filing system and via email.

**DATED:** October 30, 2026


s/ Michael Fuller
**Michael Fuller, OSB No. 093570**
Lead Trial Attorney for Mr. Herzberg
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
team@underdoglawyer.com
Phone 503-222-2000